400 So.2d 1359 (1981)
STATE of Louisiana
v.
Douglas MORAN.
No. 80-K-1884.
Supreme Court of Louisiana.
July 2, 1981.
*1360 Michael W. Shannon, Alexandria, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., J. Edward Hines, Jr., Asst. Dist. Atty., for plaintiff-respondent.
LEMMON, Justice.[*]
We granted defendant's application for certiorari to review his conviction of criminal neglect of family in violation of R.S. 14:74. Defendant's primary contention, insufficiency of evidence to support the conviction, is based on the assertion that the trial judge imputed support payments, made during February through May, 1980, to defendant's debt for support payments due in 1979 under a judgment in a civil suit (see C.C. art. 2166) and found as a matter of law that defendant had not made any support payments in 1980.

I.
Defendant and his wife were married on July 3, 1970. One son was born of the marriage. The parties subsequently separated, and the judgment of separation, rendered on August 30, 1979, ordered defendant to pay $200 per month for the support of his minor son.
At the trial of the charge now under consideration defendant testified that he was unable to pay support until December, 1979 because he was out of work, first because of a strike and then because of an injury. He further testified that he divided with his wife $600 in disability benefits received in December, 1979; that he sold the family home in January, 1980 and divided with his wife the sum of $14,000, which remained from the net proceeds of the sale after payment of bills amounting to $6,000; and that he used his half of the net proceeds to pay other community debts.
Defendant began making child support payments in February 1980. He paid $100 on February 2, $50 on February 29, $150 on March 21, $150 on April 11, and $100 on May 23, 1980. During that period of time he was earning net monthly wages of about $900.
On May 21, 1980 defendant's wife lodged a complaint with the district attorney, asserting that no support payments had been made since April 11 and that her former husband had stated he would not make any *1361 payments during the summer months. On June 16, 1980 the district attorney filed a bill of information charging that between April 11, 1980 and May 21, 1980 defendant violated R.S. 14:74 in that he intentionally failed to provide support for his minor son, who was then in necessitous circumstances.
The case was tried on July 30, 1980. Following the close of evidence and arguments by counsel, the trial judge conscientiously reviewed all of the evidence presented. Noting that defendant was in arrears on his civil support judgment, the trial judge imputed the 1980 support payments to the debt due beginning in September, 1979 and accordingly concluded that no payments were made during 1980. In rendering and explaining his verdict of guilty, the trial court stated:
"BY THE COURT: All right. I will start back with the date that the prosecution and defense have been using and, that is, a civil judgment rendered in civil court ordering this defendant to pay $200.00 a month alimony for the minor child. The first payment to be due on February [sic] 1st, 1979.
"No payments were made on the judgment through February the 1st, 1980, at which time he was $1,200.00 in arrearage on the civil judgment. On February the 2nd, he paid $100.00 on that civil judgment, which would have been one-half of the payment due on September 1st of 1979. This, in spite of the fact that he cleared $7,000.00 in January of 1980 from the sale of a house, but he said he paid other bills other than the bill for his child. The bill for the child should have come first.
"Another payment accrued on March the 1st which made him have an arrearage of $1,300.00. On March the 1st, he paid $50.00. He said it was February the 29th. She said it was March the 1st. I presume that was the date that she got it, March the 1st was, of $50.00, which would have been one-fourth of the payment due in September of 1979. Leaving an arrearage of $1,250.00. On March the 21st, he paid $150.00. Fifty dollars of which was the final payment on the September '79 obligation of $100.00 on the October 1st obligation.
"On April the 1st, another $200.00 payment became due leaving him an arrearage of $1,300.00. On April the 11th, he paid $150.00, which meant the other half owed for October '79 and $50.00 due on the November the 1st payment.
On May the 1st, another $200.00 payment accrued making an arrearage of $1,350.00. On May the 23rd he paid $100.00, which would have been a part of the obligation due on November the 1st, 1980, leaving an arrearage of $1,250.00.
"So, under the law, the payments that he made, of course, were payments for the obligations first due, which means that, legally, he hasn't paid anything under that Judgment for part of November and nothing of child support from December through May of 1980. I am not going beyond May the 23rd, 1980, with this calculation, although, since that time he has paid $200.00 which, of course would have cleared him up for the remainder of November and a part of the December payment.
"So, actually, for 1980, he has paid no child support whatever. And these payments were in payment of the civil obligation.
"There were no payments made during the period of time alleged in the petition. Also, during that period of time, the mother of the child filed this present complaint after he informed her that he was not going to pay anything during the summer vacation months. He took the witness stand and did not deny making this statement so apparently he made it, which, of course, should have alarmed her, and that expression by him certainly supplies the intent that he does not intend to support this child.
"He is still not paying under his civil obligation, of course, I am not here to *1362 enforce the civil obligation. It is to determine whether or not he is guilty of non-support.
"And this Court is of the opinion that under the facts he is guilty of nonsupport.
"BY (DEFENSE COUNSEL): Your Honor, may I say something?
"BY THE COURT: What?
"BY (DEFENSE COUNSEL): We all know that you are not here to enforce the civil obligation. And by finding that each payment made is retroactive to the first payment due and what not is exactly what you are doing, that payments were in fact made between April 11th and May 21st. Now, if ... in a civil suit, I think we can look at it that way but we are dealing now in criminal court and the fact whether he has supported the child during those periods in question, and he did make the payments at those times.
"BY THE COURT: But he stated that he was paying on this civil obligation. Under the law, the payment in goes back to the oldest indebtedness so, as I stated in the record, the payments made on April 11th and on May the 23rd revert back to payments way last year ...
"BY (DEFENSE COUNSEL): But the payments were made ...
"BY THE COURT: That's what they were for, to retire that indebtedness, and he paid nothing in May.
"I find the accused guilty of the charge."[1]
We granted certiorari to review this ruling. 392 So.2d 1055 (La. 1980).

II.
In order to convict a parent under R.S. 14:74 A(3), the state must prove that a parent intentionally failed to support his child, that the parent had financial means or ability to provide support, and that the child was in destitute or necessitous circumstances.[2] Defendant contends that the state had to prove all of these essential elements and failed to prove any.
Under the statute which prohibits desertion or nonsupport of minor children an intentional failure to perform constitutes the crime. R.S. 14:8 (1). The purpose of the statute is to compel performance when the accused is capable but unwilling to perform and not merely to punish for nonperformance.[3]
The usual defense to a charge under the statute is that the parent is willing but unable to perform (or that the child is not in necessitous circumstances). In the present case, however, the parent did perform his support obligation to some extent, and the question is whether that performance, in the light of the record proof of the parent's means and ability and the child's necessitous circumstances, is sufficient to escape criminal culpability.
The trial judge in this case erred in imputing defendant's February through May contributions to his child's support to *1363 his antecedent debt under a civil judgment. We could set aside the conviction based on trial error and remand for a new trial, at which the same evidence and additional evidence can be introduced. However, the record is complete, and the facts are not in dispute. Since defendant's assignment of error is sufficiency of evidence, which is an issue of law, the issue can be decided by this court just as well as by the trial court, without the necessity of a remand.[4]
We note first that the amount of support required by R.S. 14:74 is not necessarily coextensive with the amount of support which may be (or may have been) fixed under different standards applicable to the determination of a civil obligation for child support.[5] Thus, while evidence of a parent's partial or total failure to discharge his civil obligation is admissible, that evidence is not alone determinative of his guilt of criminal neglect of family. See State v. Guillot, 389 So.2d 68 (La. 1980). But whatever defendant's civil obligation is in this case under C.C. art. 227 or under the civil judgment ordering payment of $200 per month, the determination of defendant's criminal liability depends upon proof of the elements of the crime listed in the criminal statutes.[6]
Under the facts established in this record (with the payments viewed as made on the actual dates of payment), we hold that the state has failed to establish intentional nonsupport. Defendant provided his wife with half of his disability benefits and half of the net proceeds of the sale of the family home. When he returned to work, he provided approximately $150 per month, (1/6 of his net monthly wages) for the support of one child, in addition to paying $50 per month for the support of an illegitimate child. We simply cannot conclude that this evidence proves criminal nonsupport beyond a reasonable doubt, particularly since the mother also earned approximately $420 net per month and the record contained virtually no proof of the child's necessitous circumstances.[7]
The judgment is reversed, and the matter is remanded with instructions to grant a judgment of acquittal.
NOTES
[*] Judges Frederick S. Ellis, Luther F. Cole and J. Louis Watkins of the First Circuit Court of Appeal participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Watson and Lemmon.
[1] Even if the civil law were applicable, the imputation is arguably incorrect. C.C. art. 2166 requires imputation of the debt which the debtor at the time of payment had most interest in discharging. Since a parent is subject to criminal sanctions for current failure to support his child, it must be presumed that defendant had most interest in discharging his current support obligation in order to avoid criminal penalties.
[2] R.S. 14:74 A(3) provides:

"A. Criminal neglect of family is the desertion or intentional nonsupport:
* * * * * *
"(3) by either parent of his minor child who is in destitute or necessitous circumstances when such parent has the financial means or ability to provide support, there being a duty established by this Section for either parent to support his child."
[3] Indeed, the penalty portion of the statute accords the trial judge the additional authority to order future periodic payments in lieu of, or in addition to, fine or imprisonment. One purpose of this additional authority is to enable a spouse or a child (through the proper representative) to obtain support when no suit for divorce or separation has been filed.
[4] Prior to the decision in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) sufficiency of evidence was frequently considered to be an issue of fact and therefore not reviewable by this court in a criminal case. See, for example, State v. Austin, 374 So.2d 1252 (La. 1979). However, sufficiency of evidence is now recognized as an issue of law and subject to review in a criminal case under the Jackson standard. See, for example, State v. Byrd, 385 So.2d 248 (La. 1980).
[5] Evidence introduced by either side need not be limited to the period stated in the bill of information. Either side may present evidence relating to dates before or after the dates stated in the bill, in order to show patterns of contribution or needs, and the bounds of relevancy are to be determined by the trial judge.
[6] In State v. Galjour, 41 So.2d 215 (La. 1949) and State v. Austin, above, this court recognized the distinction between the obligation imposed by the Civil Code and the affirmative duty imposed by the criminal statutes.
[7] A parent's duty under the criminal law to support his child involves more than salvation from destitution. Proper considerations are requirements for food, shelter, clothing, health, education and comfort, determined in the light of the circumstances of all persons involved.